IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY LEON HOLLOWAY, *

Petitioner, * Civil Action No. RDB-11-0804

v. * Criminal Action No. RDB-09-0476

UNITED STATES OF AMERICA, *

Respondent. *

* * * * * * * * * * * *

**MEMORANDUM OPINION**

Petitioner Gary Leon Holloway ("Petitioner") has filed a Motion to Vacate Sentence or Correct Illegal Sentence (the "Motion") pursuant to 28 U.S.C. § 2255 (ECF No. 66). Petitioner raises two issues in seeking a new trial or reduction in sentence. First, he claims that had he been aware of issues relating to the credibility of a law enforcement officer involved in his arrest, he would have attempted to withdraw his prior entry of a guilty plea. Second, he claims ineffective assistance of counsel, arguing that his trial counsel did not tell him there was "no basis in law" for the conspiracy count to which he pled guilty.

This Court has reviewed the Motion and the government's opposition thereto (ECF No. 70), and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, Petitioner's Motion to Vacate Sentence or Correct Illegal Sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**BACKGROUND**

Petitioner pled guilty at his rearraignment on January 21, 2010 to one count of conspiracy to distribute controlled substances, arising out of his arrest on two separate

occasions in 2009.[1] (Rearraignment Transcript ("Tr.") at 11.) He agreed to a statement of facts including details of the two incidents. (ECF No. 42, Plea Agrmnt., Attach. A.)

On March 6, 2009, Petitioner was arrested at 1000F Heather Ridge Drive during the execution of a search warrant in Frederick, Maryland (the "Heather Ridge Drive arrest"). (Id.) In the course of a search incident to his arrest, an officer found in Petitioner's pants a large plastic bag that contained several smaller bags which, in turn, held cocaine base, cocaine, heroin, and marijuana, along with $355 in cash. (Id.)

Two months later, on May 13, 2009, the police were summoned to a home on Providence Court in Frederick, having been told by a caller that Petitioner was in the home and had open warrants. (Id.) When the police arrived and summoned him to the living room, Petitioner came in from the laundry room and offered a counterfeit identification card and gave a fake name. (Id.) Police determined that he was in fact Petitioner, and placed him under arrest (the "Providence Court arrest"). (Id.) In the course of a subsequent search of the laundry room, police discovered several small baggies of cocaine base, heroin and marijuana in plain view. (Id.) After the renter of the residence consented to a search of the entire home, they found Petitioner's personal belongings and mail as well. (Id.)

Petitioner appeared before this Court on January 21, 2010 and pled guilty to Count I of the Indictment, Conspiracy to Distribute Controlled Substances. (Tr. 12.) On May 25, 2010, he was sentenced to 100 months in prison. (ECF No. 57.)

Nearly six months after entry of the plea, on June 15, 2010 a newspaper article appeared in the *Frederick News Post* relating to Officer Megan Mattingly, who was the lead

[1] The written plea agreement was entered on January 22, 2010 (ECF No. 42).

officer in the investigation and Heather Ridge Drive arrest.[2] (Motion, Ex. 4.) According to that article a Frederick County judge dismissed an unrelated criminal case due to "the issue of [Officer Mattingly's] credibility."[3] (Id.) Although this comment was made in the course of a proceeding on May 20, 2010, it did not become public knowledge until the article appeared on June 11, 2010 – after Petitioner was sentenced in this case. Thereafter he filed the instant Motion.

## DISCUSSION

### I. Brady Violation Claim

Petitioner contends that under Brady v. Maryland, 373 U.S. 83 (1963), and later cases, the government was obligated to disclose the fact that the Frederick County court found Officer Mattingly not credible in an unrelated case. He claims that, had he been aware of this fact at sentencing, the following series of events would have unfolded: (1) he would have sought to withdraw his guilty plea; (2) this Court would have deemed the evidence relating to Officer Mattingly material impeachment evidence; and (3) this Court would then have permitted withdrawal of the guilty plea.

In Brady, the United States Supreme Court held that the prosecution's failure to turn over material, exculpatory evidence violates due process, irrespective of the prosecution's good or bad faith. Id. at 87. Subsequently, the Court held that evidence tending to impeach a government witness must likewise be disclosed. See Giglio v. United States, 405 U.S. 150,

[2] Officer Mattingly does not appear to have been involved in the Providence Court arrest.

[3] According to the article, the finding was based on the fact that Officer Mattingly had sworn out a warrant in which she stated she saw a defendant at the scene of a crime when in fact she was at the police department. (Motion, Ex. 4.) A subsequent article states that over the next several months, charges were dropped in other cases involving Officer Mattingly; according the article, for example, the state elected not to prosecute a case in which she was the sole witness. (Motion, Ex. 5.)

154-55 (1972) (requiring a new trial where impeachment evidence went to credibility of a government witness "without [whom] there could have been no indictment and no evidence to carry the case to the jury"). In Bagley v. United States, 473 U.S. 667 (1985), the Court elaborated that the undisclosed evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. Specifically, the Court defined that "reasonable probability" as one "sufficient to undermine confidence in the outcome." Id.

The rationale of Brady and its progeny as it relates to plea agreements was refined in United States v. Ruiz, 536 U.S. 622 (2002), where the Supreme Court held that exculpatory impeachment evidence need not be disclosed during the plea bargaining process. Id. at 633. As explained by the United States Court of Appeals for the Fourth Circuit in United States v. Moussaoui, 591 F.3d 263 (4th Cir. 2010), the concern that exists pre-trial of minimizing the possibility of an innocent person being found guilty is "almost completely eliminated" once a defendant pleads guilty. That is, once a defendant has admitted his guilt and a plea has been accepted as knowing and voluntary, he has admitted to commission of the crime, and no amount of impeachment evidence would affect the case. Such logic applies here, as Petitioner admitted his guilt in the plea agreement and in the course of the January hearing.

Even if the prosecution had been required to turn over evidence regarding Officer Mattingly, Petitioner has failed to show that such evidence is material. Nothing in the article suggests that she behaved improperly in the course of Petitioner's arrest at Heather Ridge Drive and she was not present at the Providence Court arrest. His assumptions that the

information would have had any bearing on his trial are not sufficient to permit him to withdraw his plea.[4]

In United States v. Harrod, 2011 U.S. Dist. LEXIS 22878 (D.Md. 2011), this Court denied a Section 2255 motion under similar circumstances, holding that an article appearing in the *Baltimore Sun* three years after a defendant's arrest bore no relationship to that defendant's case. There the defendant had pled guilty; the article asserted that the officer in question was not convicted; and there was no suggestion that any officer acted inappropriately during the defendant's arrest. Id. at *5-6. The same circumstances exist here: Petitioner admitted to the facts stated in Attachment A to the Plea Agreement; there is no suggestion in the *Frederick News Post* article that Officer Mattingly commited any wrongdoing relating to Petitioner; and he has failed to level any specific allegations against her relating to his arrest.

Finally, even assuming Petitioner could overcome these obstacles – *i.e.*, admitting his guilt and failing to show materiality of the evidence – he has not shown a "fair and just reason" for withdrawal of the guilty plea. See Fed. R. Crim. P. 11(d)(2)(B). The Fourth Circuit in United States v. Moore, 931 F.2d 245 (4th Cir. 1991), enumerated six factors a court may look to in determining whether the defendant has met his burden under the rule:[5]

> (1) Whether the defendant has offered credible evidence that his plea was not knowing or not voluntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between the entering of the plea and the filing of the

[4] His claims rest on numerous assumptions: (1) that it is "reasonable to infer that other officers in the Frederick County Police Department were aware of what was going on with Mattingly" before the article appeared; (2) that one or some of such officers must have been working with the Assistant United States Attorney; and (3) that the prosecuting attorney would have known of this information. (Motion at 8.) Importantly the court's finding relating to Officer Mattingly did not even take place until six months after the guilty plea was entered, and the article appeared after sentencing.

[5] At the time the standard appeared in Rule 32(d).

> motion; (4) whether defendant has had close assistance of competent counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether it will inconvenience the court and waste judicial resources.

Looking at the factors in Moore, Petitioner has failed to present evidence adequate to allow withdrawal of his plea. With respect to the first factor, he has submitted an affidavit saying he "would have attempted to withdraw from [his] guilty plea" if he had known about the finding regarding Officer Mattingly (Motion, Exhibit 6); he does not claim that the plea was not knowing and voluntary. Indeed he specifically stated at the plea agreement that he understood the charges against him and acknowledged that he was guilty of Count I. (Tr. 13.) Specifically, there is no assertion of legal innocence. Third, there has been some delay on Petitioner's part in that the Motion to Vacate came some 15 months after entry of the guilty plea. With respect to the fourth factor, Petitioner was ably assisted by counsel throughout the trial. See infra Part II.

Finally, the fifth and sixth factors in Moore consider prejudice to the government and potential waste of resources in permitting withdrawal of a guilty plea. The prejudice to the Government stems from the elapse of over three years since commission of the crime, and indeed over two and half years since Petitioner's admission of guilt; to permit a withdrawal of the plea under such circumstances would be both prejudicial and wasteful.

Because Petitioner cannot satisfy the test set out in Moore, there is no reason to permit withdrawal of the guilty plea. He has not shown reason under Brady to do so, in light of a legitimate plea agreement and the immateriality of the information he seeks to admit.

## II. Ineffective Assistance of Counsel Claim

To establish ineffective assistance of counsel, a defendant must prove both elements of the test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 671 (1984). First, the defendant must establish that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." Id. at 688. In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." Id. at 689. Second, a defendant must show that counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." Id. at 687. To establish this level of prejudice, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Id. at 694.

When a defendant alleges ineffective assistance after a guilty plea has been entered, the burden is even greater. In Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), the Fourth Circuit explained the logic behind Strickland as follows:

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [Strickland] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hooper, 845 F.2d at 475 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Petitioner claims that his counsel erroneously permitted him to plead guilty to a conspiracy charge, when the facts – according to Petitioner – did not show a conspiracy. At the hearing, Petitioner expressed confusion about the conspiracy charge. (Tr. 31.) This

Court took great pains to see that he understood the charge in Count I.[6]

It seems as though Petitioner wishes to level a substantive legal challenge to Count I (arguing that there is no basis in law for the count), rather than a due process challenge (that his counsel "improperly advised him" that there was such a basis). There is simply no basis to challenge the legal sufficiency of the charge, insofar as the facts to which he admitted establish a conspiracy on their face. Petitioner admitted to being arrested with others at Heather Ridge Drive, with a large bag containing smaller bags that in turn contained illegal drugs and cash. (Plea Agrmnt., Attach. A.) He also admitted to producing counterfeit identification at the Providence Road arrest, and giving a fake name. (Id.) A search of the room he had been seen exiting contained small baggies of narcotics, and Petitioner's belongings were on the premises as well. (Id.) See United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992) (holding that evidence of the conspiracy need only show "a slight connection between the defendant and the conspiracy to support conviction").

Even assuming Petitioner could aver that the substance of the conspiracy charge was improper, he cannot convert whatever legal claim that may be into one alleging ineffective assistance of counsel under § 2255. Section 2255 provides a basis for collateral attack of a conviction, not substantive, as Petitioner alleges here. In addition to there being no deficiency, Petitioner cannot show prejudice. There was ample evidence against him, and he cannot show a "reasonable probability" that he would have gone to trial.

---

[6]When asked by this Court at the hearing, "Do you understand the elements of the crime of conspiracy to which you are entering a plea of guilty," Petitioner replied, "Yes." (Tr. 28.) The Court then explained at length the elements of the conspiracy and specifically ensured that he understood that "[t]he matter of the factual basis for a charge of conspiracy in a guilty plea is *not dependent upon everyone who is alleged to be part of the conspiracy being precisely charged with conspiracy*" (emphasis added). (Id. at 33.) The Court clarified when Petitioner appeared to pause at the hearing that "[t]he fundamental question is did you commit the crime as summarized by the government?" (Id. at 34.) Petitioner replied "Yes" to that question, and "yes" to the next question from this Court: "Do you still wish to plead guilty?" (Id.)

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate Sentence or Correct Illegal Sentence pursuant to 28 U.S.C. § 2255 is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. United States v. Hadden, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: October 2, 2012

Richard D. Bennett
United States District Judge